UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

Present: The Honorable   JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Cheryl Wynn | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) ORDER RE MOTION TO DISMISS PURSUANT TO SECTION 12(b)(6) (DKT. 10)

### I. Introduction

On November 7, 2019, Brian Whitaker ("Whitaker," "Plaintiff") brought this action against RCP Belmont Shore LLC, a California Limited Liability Company ("Belmont Shore," "Defendant") and Does 1-10. Dkt. 1. The Complaint alleges violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code. §§ 51-53. Dkt. 1 ¶¶ 21-35.

On December 11, 2019, Defendant filed a "Motion Pursuant to Section 12(b)(6)" (the "Motion"). Dkt. 10. On December 18, 2019, Defendant filed an Amended Motion to Dismiss Pursuant to Section 16(b)(6) (the "Amended Motion" (Dkt. 17)) in response to an order noting a deficiency in the first-filed motion (Dkt. 10). Dkts. 15, 16. On December 30, 2019, Plaintiff filed two documents titled "Plaintiff's Opposition to Defendants' Motion to Dismiss." Dkts. 19, 21. No explanation has been given for the successive filings and only the second-filed document will be treated as the opposition (Dkt. 21).

Based on a consideration of the matters raised with respect to the Motion and pursuant to Local Rule 7-15, the Motion was taken under submission without oral argument. Dkt. 22. For the reasons stated in this Order, the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### II. Factual Background

#### A. Parties

Plaintiff is a California resident who has physical disabilities. Dkt. 1 ¶ 1. He is quadriplegic and uses a wheelchair for mobility. *Id.* Defendant is the owner of real property located at 5258 E. 2nd Street, Long Beach, California. *Id.* ¶ 2. Defendant is alleged to own "Rance's Chicago Pizza" located at that address (the "Restaurant"). *Id.*

#### B. Allegations in the Complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
|---|---|---|---|
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

Plaintiff allegedly visited the Restaurant in October 2019 "with the intention to avail himself of its goods, motivated in part to determine if the defendants comply with the disability access laws." Dkt. 1 ¶ 8. The Complaint alleges that the Restaurant is "open to the public, a place of public accommodation, and a business establishment." *Id.* ¶ 9. The Complaint alleges that, on the date of Plaintiff's visit, the Restaurant failed to provide "accessible dining surfaces." *Id.* ¶ 10.

The Complaint alleges that Plaintiff personally encountered this barrier to access, the barrier "denied plaintiff full and equal access," and the "failure to provide accessible facilities created difficulty and discomfort." Dkt. 1 ¶¶ 12-14. The Complaint alleges on information and belief that, although Plaintiff did not personally encounter them, the Restaurant failed to provide "accessible sales counters" or "accessible restrooms." *Id.* ¶¶ 15, 16. The Complaint alleges that these barriers are "easily removed without much difficulty or expense" and are the "types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove." *Id.* ¶ 18. The Complaint alleges that Plaintiff "will return to the Restaurant to avail himself of its goods and to determine compliance with the disability access laws once it is represented to him that the Restaurant and its facilities are accessible." *Id.* ¶ 19. The Complaint alleges on information and belief that, "[g]iven the obvious and blatant nature of the barriers and violations alleged herein," there "are other violations and barriers on the site that relate to [Plaintiff's] disability" and that the Complaint will be amended after a site inspection. *Id.* ¶ 20.

Based on the factual allegations, the Complaint then alleges that the Restaurant has violated the ADA and the Unruh Act. Dkt. 1 ¶¶ 21-35.

   C.  Requested Relief

The Complaint seeks injunctive relief compelling compliance with the ADA and the Unruh Act. Dkt. 1 at 7. It also seeks an award of $4000 for each violation of the Unruh Act, as well as an award of attorneys' fees and costs. *Id.*

**III.  Analysis**

   A.  Article III Standing

     1.  Legal Standards

Because federal courts have limited jurisdiction, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)). "Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560 (citation omitted). If a plaintiff lacks standing under Article III, an action must be dismissed for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998); *accord Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
|---|---|---|---|
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61). When a plaintiff seeks injunctive relief, establishing standing under Article III also requires a showing of "real or immediate threat that the plaintiff will be wronged again -- a 'likelihood of substantial and immediate irreparable injury.'" *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

    2.    <u>Application</u>

        a)    General Rules

A defendant contesting subject matter jurisdiction may do so through a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). The Motion was not brought pursuant to Rule 12(b)(1). However, Defendants argue that Plaintiff does not have Article III standing because the Complaint does not sufficiently allege an intent to return to the Restaurant. Dkt. 17 at 12.

"[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Thus, "[t]o the extent [Defendants] challenge . . . standing, the court construes their motion[] as brought under Rule 12(b)(1)." *HRPT Props. Trust v. Lingle*, 676 F. Supp. 2d 1036, 1041 (D. Haw. 2009). Accordingly, the Motion is so construed in this manner to serve party and judicial efficiency.

In general, a jurisdictional challenge may be fact-based or one that relies on the face of the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The latter "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* That is the basis for the Motion. In assessing a facial challenge, a court must accept the allegations of the complaint as true and construe them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

The Ninth Circuit has held that a court must take a "a broad view of constitutional standing in civil rights cases," and that a disabled plaintiff has standing to advance an ADA claim under the following conditions:

> First, the plaintiff [has] suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting *Lujan*, 504 U.S. at 560-61).

        b)    Injury in Fact

An allegation that the plaintiff "personally suffered discrimination as a result of the barriers in place" at a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
|---|---|---|---|
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

public accommodation," "and that those barriers have deterred him . . . from patronizing the store" is sufficient to establish that the alleged injury is concrete and particularized. *Doran*, 524 F.3d at 1040. Such an injury can be stated under the ADA by allegations that a plaintiff was deterred from patronizing an establishment due to its failure to comply with that statute. This constitutes an actual injury. *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002). Alternatively, imminent injury can be presented through allegations as to the risk of future harm when a plaintiff will later visit a location and encounter conditions that are not ADA-compliant. *Id.*

The Complaint alleges that Plaintiff "personally encountered" inaccessible dining surfaces. Dkt. 1 ¶ 10. The Complaint also alleges that this resulted in "difficulty and discomfort" during his visit, and that he has been deterred from revisiting the Restaurant "to avail himself of goods or services" because he "will face unlawful and discriminatory barriers again." *Id.* ¶¶ 14, 19. These allegations are sufficient to state a concrete and particularized injury that is both actual and imminent.

        c)     Causal Connection

A plaintiff need not make "an individualized causal showing" as to precisely which architectural barriers deterred him or her from patronizing a business. *Doran*, 524 F.3d at 1042. It would be "ultimately misleading to conceptualize each separate architectural barrier inhibiting a disabled person's access to a public accommodation as a separate injury that must satisfy the requirements of Article III," and "perverse" to suggest that the inability of a disabled person to personally discover facts about all ADA violations at a location "would defeat that plaintiff's standing to challenge other violations at the same location." *Id.*

The Complaint alleges that Plaintiff's injury was due to inaccessible dining surfaces and, on information and belief, inaccessible sales counters and bathrooms. Dkt. 1 ¶¶ 10, 16-17. This is sufficient to satisfy the causal connection requirement as to both actual and imminent injury.

        d)     Redressability

The Complaint seeks, *inter alia*, injunctive relief requiring Defendants' compliance with the ADA. Dkt. 1 at 7. There is jurisdiction to grant such relief, and, if granted, it would resolve Plaintiff's alleged injury -- his difficulty in accessing the Restaurant, and being deterred from returning there.

        \*        \*        \*

For the foregoing reasons, the Complaint satisfies each of the requirements of Article III standing. To the extent that the Motion is deemed a challenge under the standards of Rule 12(b)(1), it is **DENIED**.

    B.     Sufficiency of the Pleading

        1.     <u>Legal Standards</u>

"[A] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). Thus, the complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
|---|---|---|---|
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

570 (2007). The complaint need not include detailed factual allegations, but rather must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

A party may move to dismiss a complaint for its failure to state a claim. Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

      2.    <u>Application</u>

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under the ADA, a plaintiff must allege that: "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Ariz. ex rel. v. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010) (citation omitted). "Damages are not recoverable" under the ADA. *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)). "[O]nly injunctive relief is available." *Id.*

Under the ADA, facilities available to the public that were constructed after January 26, 1993, must be "readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements" in the ADA Accessibility Guidelines. 42 U.S.C. § 12183(a)(1). The ADA Accessibility Guidelines, which were "[p]romulgated by the Attorney General to 'carry out the provisions' of the ADA, . . . 'lay out the technical structural requirements of places of public accommodation.'" *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (quoting *Fortune v. Am. Multi-Cinema, Inc.,* 364 F.3d 1075, 1080-81 (9th Cir. 2004)).

With respect to public accommodations that were in place as of January 26, 1992, any subsequent alterations must be, "to the maximum extent feasible, . . . readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(2). Thus, to the same extent feasible, they must comply with the ADA Accessibility Guidelines. *See* 28 C.F.R. § 36.406(a). In an existing and unaltered facility, an "architectural barrier" to access must be removed when it is "readily achievable," *i.e.*, "easily accomplishable and able to be carried out without much difficulty or expense," to so do. 42 U.S.C. §§ 12181(9), 12182(b)(2)(A)(iv). Under this provision, "whether an architectural element denies full and equal access to persons with disabilities is determined based on the [ADA Accessibility Guidelines]."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

*Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 848 (N.D. Cal. 2011) (citing *Chapman*, 631 F.3d at 945).

Whether creating access by removing a barrier is "readily achievable" is determined by considering the following factors: (i) the nature and cost of the action needed; (ii) the financial resources available to the owner or operator of the facility; and (iii) the type of operation involved. 42 U.S.C. § 12181(9). If "an entity can demonstrate that the removal of a barrier . . . is not readily achievable," it must provide access "through alternative methods if such methods are readily achievable." *Id.* § 12182(b)(2)(A)(v).

The 2010 ADA Accessibility Guidelines, which are the operative ones, include the following requirements:

- "Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with [§ ]902. . . . Exceptions: 1. Sales counters and service counters shall not be required to comply with 902." 36 C.F.R. Pt. 1191, App'x B § 226
- In general, "[d]ining surfaces and work surfaces shall comply with [§§ ]902.2 and 902.3," which require certain clear floor spaces and height limitations. 36 C.F.R. Pt. 1191, App'x D § 902.

The Complaint alleges that Plaintiff is disabled as defined by the ADA, and that he needs to use a wheelchair to move from place to place. Dkt. 1 ¶ 1; *see also* 42 U.S.C. § 12102(1)(A) (defining "disability" as "a physical or mental impairment that substantially limits [a] major life activit[y]"); *id.* § 12102(2)(A) (mobility is a "major life activit[y]"). This is sufficient to state the first element of an ADA claim.

It is also alleged that Defendant owns the Restaurant, which is "a facility open to the public, a place of public accommodation, and a business establishment." Dkt. 1 ¶¶ 2-4, 9; *see also* 42 U.S.C. § 12181(7)(B) (identifying "a restaurant, bar, or other establishment serving food and drink" as a public accommodation). This is sufficient to state the second element of an ADA claim.

Finally, the Complaint alleges that Plaintiff could not access the Restaurant because there were no suitable dining surfaces as required by the ADA. Dkt. 1 ¶¶ 10-11. This is sufficient to state the third element of an ADA claim.

For these reasons, the Motion is **DENIED** as to the sufficiency of the allegations as to a violation of the ADA.

    C.    Supplemental Jurisdiction

        1.    <u>Legal Standards</u>

District courts may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). "In order to decide whether to exercise jurisdiction over pendent state law claims, a district court should consider . . . at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 715 (9th Cir. 1990) (internal quotations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
|---|---|---|---|
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

Courts have discretion to decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Where jurisdiction is declined because of "exceptional circumstances," the court must "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values [*i.e.*, 'economy, convenience, fairness, and comity'] provide compelling reasons for declining jurisdiction in such circumstances." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1558 (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

        2.      <u>Application</u>

The Unruh Act provides that "[a]ll persons . . . are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). It also states that "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section." *Id.* § 51(f). Under the Unruh Act, actual damages -- "in no case less than four thousand dollars" -- are recoverable. *Id.* § 52(a).

The Complaint alleges that there is supplemental jurisdiction over Plaintiff's "attendant and related" Unruh Act claim, because that alleged violation arises "from the same nucleus of operative facts" as the ADA claim. Dkt. 1 ¶ 6.

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." *Garibay*, 2019 WL 5204294, at *1 (quoting *Velez v. Il Fornaio (Am.) Corp.*, CV 3:18-1840 CAB, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018)). Additionally, as Defendant noted, California imposed a "high-frequency litigant fee" of $1000 on plaintiffs who have "filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction a construction-related accessibility violation," as well as on attorneys who represent more than ten such plaintiffs. Dkt. 17 at 14-15 (quoting Cal. Civ. Code Proc. § 425.55(b)(1)). These requirements were designed to address the "very small number of plaintiffs [who] have filed a disproportionately large number of the construction-related accessibility claims in the state . . . . seeking quick cash settlements rather than correction of the accessibility violation." Cal. Civ. Proc. Code § 425.55.

"By enacting restrictions on the filing of construction-related accessibility claims, California has expressed a desire to limit the financial burdens California's businesses may face for claims for damages under the Unruh Act and other state law theories." *Garibay*, 2019 WL 5204294, at *4. When such actions are brought in an action filed in a federal court, California's "heightened pleading standards and increased filing fees do not apply." *Id. Garibay* concluded that, when plaintiffs who file many similar ADA actions seek to use supplemental jurisdiction as the basis for including an Unruh Act claim, they have "evaded these limits and sought a forum . . . [to] claim these state law damages in a manner inconsistent with the state law's requirements." *Id.*

Because "California's elected representatives, not this Court, have enacted laws restricting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
|---|---|---|---|
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

construction-related accessibility claims, and, as a result, dictated that these claims be treated differently than other actions," other district courts in California have declined to provide "an escape hatch" from the state's statutes, on the grounds that to do so would be "an affront to the comity between federal and state courts." *Garibay*, 2019 WL 5204294, at *4-5 ("Declining to exercise supplemental jurisdiction over plaintiff's Unruh Act and any other construction-related accessibility claim in these circumstances supports the values of judicial economy, convenience, fairness, and comity."); *see also, e.g.*, *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) ("Plaintiff is engaging in forum-shopping by bringing his action in federal court and attempting to avoid California's heightened pleading requirements for disability discrimination claims. . . . Federal courts may properly take measures to discourage forum-shopping, and here . . . the Court finds this to be a compelling reason to decline supplemental jurisdiction."); *Whitaker v. Mac*, No. CV 19-03002 ODW, 2019 WL 4849199, at *5 (C.D. Cal. Oct. 1, 2019) ("Declining to exercise supplemental jurisdiction over [an] Unruh Act claim in these circumstances supports the values of judicial economy, convenience, fairness, and comity."); *Holland v. Ho*, No. 19-cv-1698-JLS, Dkt. 14 at 3-4 (C.D. Cal. Dec. 3, 2019); *Love v. Lee*, No. 18-cv-0599-RSWL, Dkt. 29 at 8-11 (C.D. Cal. Dec. 12, 2019). *But see White v. Wisco Restaurants, Inc.*, No. 17-cv-103, 2018 WL 1510611, at *4 (S.D. Cal. Mar. 27, 2018) (concluding in an ADA action that a plaintiff's selection of the forum of her choosing was "not an unusual circumstance," and that "dismissing state law claims would not accommodate any of those [*Gibbs*] values").

The Complaint was filed on November 7, 2019. Dkt. 1. A review of the docket in this District shows that Plaintiff has filed more than ten similar actions in the 12 months preceding the filing of the Complaint. Under the Superior Court standards, he would be deemed a high-frequency litigant there.

"California's recent legislative enactments confirm that the state has a substantial interest in this case." *Whitaker v. La Conq*, No. CV 19-07404 CJC, Dkt. 11 at 4 (C.D. Cal. Sept. 20, 2019). The California legislature has determined that high-frequency litigation of the type presented here "unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act." Cal. Civ. Proc. Code § 425.55(a)(2). "Although . . . it would be more convenient and efficient for the ADA claim and the state law claim based on the same ADA violations to be litigated in one suit . . . these issues are not so dire to overcome 'California's strong interest in interpreting and enforcing its own rules without federal courts serving as a convenient end-around for creative litigants.'" *Arroyo v. A&G Imprerises, LLC* [*sic*], No. CV 18-06338 PSG, Dkt. 41[1] at 9 (C.D. Cal. Aug. 20, 2019), (quoting *Schutza v. Alessio Leasing, Inc.*, No. CV 18-2154 LAB, 2019 WL 1546950, at *4 (S.D. Cal. Apr. 8, 2019)).

---

[1] An appeal of this order is pending *sub nom. Arroyo v. Rosas*, No. 19-55974 (9th Cir.). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. . . . In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (Kennedy, J.). However, the "discretionary decision to decline to exercise supplemental jurisdiction does not involve a controlling question of law, [and] is consistent with the findings of a substantial number of other federal courts." *Garibay*, 2019 WL 5204294, at *7. Therefore, the Court declines to stay this matter. *Id.*; *accord Whitaker*, No. CV 19-07404, Dkt. 11 at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-09561 JAK (JEMx) | Date | March 30, 2020 |
|---|---|---|---|
| Title | Brian Whitaker v. RCP Belmont Shore LLC | | |

Furthermore, the Clerk's Office for the Central District has determined that, since the change in the requirements for filing of actions like this one in a Superior Court, ADA cases have increased from 3% of all civil filings in 2013 to 24% of all such filings in 2019. *Whitaker*, No. CV 19-07404, Dkt. 11 at 6; *see also Arroyo*, No. CV 18-06338, Dkt. 41 at 8 ("The number and percentage of such cases filed in the Central District have increased each year since California enacted the limitations on high-frequency litigants."). "The only explanation for the phenomenon is the strategic evasion of California's new reforms." *Whitaker*, No. CV 19-07404, Dkt. 11 at 6.

In light of the findings by the California legislature, the determination in *Whitaker* and other similar decisions that supplemental jurisdiction should be declined "primarily based on comity" is persuasive. No. CV 19-07404 at 4. Where a plaintiff's "gamesmanship significantly undermines California's efforts to reform Unruh Act litigation. . . . whatever inefficiencies may arise from Plaintiff litigating his claims in two separate forums are slight in comparison to California's weighty interest in ensuring its laws are not circumvented." *Id.* at 6-7. Thus, a consideration and balancing of the *Gibbs* factors weighs in favor of declining supplemental jurisdiction. Moreover "[t]his situation, and the burden the ever-increasing number of such cases poses to the federal courts, presents 'exceptional circumstances'" which also warrant a decision not to exercise supplemental jurisdiction. *Garibay*, 2019 WL 5204294, at *4. Plaintiff can seek appropriate remedies through litigation in a Superior Court.

For the foregoing reasons, the Motion is **GRANTED** insofar as it seeks dismissal of the Unruh Act claim, without prejudice to Plaintiff's refiling of those claims in an appropriate Superior Court. Accordingly, this portion of the Order will be stayed for 21 days following its issuance to permit Plaintiff to do so while this claim remains pending here.

### IV.   Conclusion

For the reasons stated in this Order, the Motion is **DENIED-IN-PART** as to standing and the ADA claim. The Motion is **GRANTED-IN-PART** as to the Unruh Act Claim, for which supplemental jurisdiction is declined, with this portion of the Order stayed for 21 days to permit Plaintiff to refile that claim in an appropriate Superior Court if he elects to do so.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | cw | |